# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THE CINCINNATI INSURANCE            )
COMPANY, an Ohio Corporation,       )
                                    )
                Plaintiff,          )
                                    )
v.                                  )  Case No. 11-cv-2075-JAR/KGG
                                    )
M.S., a minor, by and through her   )
Natural Guardians and Next Friends, )
EDWARD SERRANO and ANGELA           )
SERRANO; and DEREK CHRISTIANI,      )
                                    )
                Defendants.         )
_____)

## ORDER DENYING IN PART AND GRANTING IN PART
## PLAINTIFF'S MOTION TO COMPEL

In this case, the Defendants Serrano (acting for the minor, M.S.), through a

counterclaim to Plaintiff Cincinnati Insurance  Company's action for declaratory

judgment, seek judgment for Insurance Company's alleged bad faith in failing to

settle Serranos' claim against its insured (Christiani) for policy limits.  Serranos,

through an assignment of rights from the insured, claim that Insurance Company's

failure to settle for the $100,000 limits of insured's motor vehicle policy resulted in

a state court judgment against the insured for over $18,000,000.

Before the Court is Insurance Company's Motion to Compel (Doc. 30).  The

dispute centers on a series of interrogatories and requests for production which

seek information from the Serranos and their attorneys concerning decisions and strategies during and before the state court action. While the parties agree that the information sought would normally be considered privileged as attorney-client communications or work product, Insurance Company claims those privileges were waived by the bringing of the counterclaim. Serranos disagree, but have indicated that they will provide some limited information from counsel concerning whether, when, and why an offer of policy limits would have been accepted.

The Court rejects Insurance Company's argument that the assertion of the bad faith claim, standing alone, waives the Serranos' attorney client or work product privileges. However, if Serranos' provide some protected information in response to the requests, or propound such evidence to support their own claims in this case, that action will waive the privileges as to those matters, and as to such further information as is relevant to fully explore the assertions made in the waived information.

## **BACKGROUND**

**A.     Facts**.

The following facts have been offered by the parties and, for the purpose of this motion, are not substantially in dispute.

On May 29, 2009, M.S., a minor, was seriously injured in a motor vehicle accident with Insurance Company's insured, Christiani. Insurance Company

received notice of the accident on June 1, 2009.  According to Serranos, the facts

known to Insurance Company established early that their insured was likely at fault

in the accident, and that the injuries of M.S. were serious.  On August 21, 2009 (or

June 30 as there may be some disagreement concerning this date), Serranos'

counsel sent a letter to Insurance Company announcing their representation of M.S.

Serranos claim that on several occasions between June 22 and October 2009, they

attempted to learn the limits of the policy.

On October 26, 2009, Insurance Company hired counsel to defend its

insured.  Three days later on October 29, Insurance Company informed Serranos

that the liability limits of the policy were $100,000, but did not offer to settle for

policy limits.  Serranos claim that they requested additional information regarding

the availability of other insurance (an "umbrella policy") but received no response

to that request.

Serranos filed a lawsuit on November 10, 2009.  Prior to this, Insurance

Company made no offer and Serranos made no demand or offer.  By December 16,

2009, Serranos' counsel was claiming to Christiani's counsel that Insurance

Company had acted in bad faith by failing to offer to settle for policy limits.

Serranos claim that by December 18, 2009, Insurance Company was aware that no

additional insurance was available, but that this information was not communicated

to Serranos.  On December 30, 2009, Insurance Company offered to settle the case

for policy limits.  Although the offered exhibits are not entirely clear on this point, it appears the offer was rejected by January 4, 2010.

On January 22, 2010, Serranos' counsel wrote Christiani's counsel repeating the bad faith claim and asking to contact Christiani's personal counsel. On March 11, 2010, Serranos' counsel wrote Christiani's counsel stating that they had spoken several times about entering into a separate agreement, and requesting that Christiani be provided separate counsel to consult with for that purpose.

On January 21, 2011, Serranos and Christiani entered into a settlement agreement assigning Christiani's bad faith contract claim to Serranos and agreeing not to enforce the eventual judgment against Christiani's personal assets.  That same day, a hearing on damages was held in the state court proceeding, resulting in a judgment in excess of $18,000,000.

On February 8, 2011, Insurance Company filed the present action requesting a declaratory judgment limiting its liability to Serranos, who then filed a counterclaim alleging recovery for Insurance Company's bad faith failure to offer policy limits.  The counterclaim includes the following allegations and claims:

> 26.  [Insurance Company] did not initiate any settlement negotiations with M.S. prior to filing of the lawsuit against its Insured.

> 35.  The December 30, 2009 policy limits offer was the first settlement offer made by Insured to M.S.

(Doc. 13, at 9, 10.)

The allegations of Insurance Company's breach of contract stated in the

counterclaim are that Insurance Company

> breached its contact and acted negligently and in bad
> faith in the following respects:
>
> a)  Failing to timely comply with its duty to initiate
>     settlement negotiations and tender its policy limits
>     when it knew or should have known that the
>     liability of its Insured was clear and M.S.'s
>     damages far exceeded the policy limits;
>
> b)  Failing to respond to the requests of M.S. counsel
>     to disclose the applicable polity limits so
>     negotiations could occur and a settlement demand
>     could be made;
>
> c)  Failing to properly conduct a good faith
>     investigation of M.S.'s claim against the Insured;
>
> d)  Failing to comply with its duty to conduct a good
>     faith follow-up investigation of M.S.'s medical
>     care, treatment and damages;
>
> e)  [repeats c)];
>
> f)  Failing to give equal consideration to its Insured's
>     best interests by not initiated settlement
>     negotiations and not tendering policy limits before
>     M.S. filed the underlying lawsuit against the
>     insured;
>
> g)  Failing to properly consider the amount of
>     financial risk to which its Insured was exposed by

its failure to timely tender the policy limits;

h)     Failing to timely take the actions necessary to keep the recovery against the insured within the policy limits;

I)     Failing to conduct itself with that degree of care which would be used by an ordinarily prudent person in the management of his own business, which no policy limits applicable to the claim; and

j)     Other duties arising under Kansas law breached by Insurer based on the evidence discoverable as this case proceeds.

46.     The entry of judgment against the Insured in excess of the policy limits was the direct consequence of Insurer's breach of contract and acts of negligence and bad faith.

(*Id.*, at 11-12.)  Serranos demand the full amount of their state court judgment for the breach of Insurance Company's duties to Christiani.

**B.**    **Discovery Requests at Issue**.

The present motion challenges Serranos' privilege objections to several Interrogatories and Requests for Production.

**1.**    **Disputed Interrogatories**

Interrogatory No. 5(f)  requests the substance of communications between Serranos and their attorneys related to any response to the December 30, 2009 policy limits offer.  (Doc. 31-5, at 15.)  M.S. objected on the basis of attorney-client privilege and the work product doctrine.  In a supplemental response,

Serranos raised an objection that the "information sought is not calculated to lead to the discovery of relevant evidence." (*Id.*, at 16.)

The disputed portion of Interrogatories Nos. 6 and 7 asks the Serranos "why" they never made a settlement demand prior to January 23, 2011 (6) and never requested a settlement offer before December 30, 2009 (7). (*Id.*, at 16-18.) Serranos objected that the interrogatories sought information protected by the work product and attorney-client privileges, and that the information was not relevant or likely to lead to the discovery of relevant evidence (described hereafter, generically, as a "relevance" objection).

In a supplemental response to Interrogatory No. 6, Serranos described some settlement discussions with Christiani's attorney between April 1, 2010, and January 2011, and provided some documents concerning those events. (Doc. 31-5, at 17.) In that supplemental response, Serranos' counsel also offered a proposal for a limited waiver of the attorney-client privilege and work product doctrine in which "counsel will respond to written and verbal discovery on the subjects of whether a policy limits offer on behalf of Derek Christiani would have been accepted, when that could have been accomplished, and why such an offer would or would not have been accepted . . . ." (*Id.*)

Interrogatory No. 8 queries all communications between Serranos and their attorneys concerning making a settlement demand. (*Id.*, at 18.) Serranos asserted

attorney-client privilege and the work product doctrine.  Insurance Company also complains that no privilege log was provided concerning this response.  In a supplemental response Serranos added a relevance objection.  (*Id.*)

Interrogatory No. 9 queries all communications between Serranos and their attorneys concerning the December 30, 2009, offer.  (*Id.*)  Serranos asserted the attorney-client privilege and work product doctrine.  Insurance Company also complains that no privilege log was provided concerning this response.  In a supplemental response Serranos added a relevance objection.  (*Id.*)

Interrogatory No. 10 queries all communications between Serranos and their attorneys concerning Christiani's policy limits.  (*Id.*)  Serranos asserted the attorney-client privilege and work product doctrine.  (*Id.*, at 19.)  Insurance Company also complains that no privilege log was provided concerning this response.  In a supplemental response Serranos added a relevance objection.  (*Id.*)

Interrogatory No. 11 queries all communications between Serranos and their attorneys before November 11, 2009 (when the state court action was filed) concerning filing a lawsuit against Christiani.  (*Id.*)  Serranos asserted the attorney-client privilege and work product doctrine.  Insurance Company also complains that no privilege log was provided concerning this response.  In a supplemental response Serranos added a relevance objection.  (*Id.*)

Interrogatory No. 12 queries all communications between Serranos and their

attorneys concerning M.S.'s medical bills and liens.  (*Id*.)  Serranos asserted the

attorney-client privilege and work product doctrine and made a relevance

objection.  In a supplemental response Serranos added a relevance objection.  (*Id*.)

Interrogatory No. 13 queries  all communications between Serranos and their

attorneys before December 30, 2009, concerning whether or not to make a

settlement demand.  (*Id*., at 19-20.)  Serranos asserted the attorney-client privilege

and work product doctrine.  (*Id*., at 20.)  Insurance Company also complains that

no privilege log was provided concerning this response.  In a supplemental

response Serranos added a relevance objection.  (*Id*.)

Interrogatory No. 14 queries all communications between Serranos and

their attorneys before March 12, 2010, concerning the value and the appropriate

settlement value of the claims.  (*Id*.)  Serranos asserted the attorney-client privilege

and work product doctrine.  Insurance Company also complains that no privilege

log was provided concerning this response.  In a supplemental response Serranos

added a relevance objection.  (*Id*.)

Interrogatory No. 15 queries  all communications between Serranos and their

attorneys before March 12, 2010 concerning their attorneys' "investigation,

handling, litigation and/or settlement" of the claim.  (*Id*.)  Serranos the attorney-

client privilege and work product doctrine.  Insurance Company also complains

that no privilege log was provided concerning this response.  In a supplemental

response Serranos added a relevance objection.  (*Id*.)

Interrogatory No. 16 requests various information concerning settlement efforts made by Serranos or on their behalf, including, attorney-client communications about settlement demands before March 11, 2010.  (*Id*., at 20-21.) Serranos asserted attorney-client and work product privileges to the request for attorney-client communications.  (*Id*., at 21.)  Insurance Company also complains that no privilege log was provided concerning this response.  In a supplemental response Serranos added a relevance objection.  (*Id*.)

### 2.   **Disputed Requests for Production of Documents**.

Request for Production No. 6 requests copies of all statements obtained prior to March 12, 2010, related to the accident.  (Doc. 31-5, at 3.)  Serranos the attorney-client privilege and work product doctrine and challenged the relevance of the request.  They added, "without waiving such objections," that they were "unaware" of statements except for two depositions already in Insurance Company's possession.  (*Id*.)  Insurance Company also complains that no privilege log was provided concerning this response.

Requests Nos. 8, 10, and 11 seek documents evidencing communications between Serranos and their attorneys regarding making a settlement demand (8), Christiani's policy limits (10) and, prior to November 11, 2009, filing a lawsuit against Christiani (11).  (*Id*., at 4-5.)  Serranos the attorney-client privilege and

work product doctrine, but represented "without waiving said objections" than they were unaware of such documents.  (*Id.*)  Insurance Company also complains that no privilege log was provided concerning this response.  These requests mirror interrogatory requests 8, 10 and 11.

Request No. 9 seeks documents evidencing communications between Serranos and their attorneys regarding the December 30, 2009, offer.  (*Id.*, at 4.) Serranos asserted the attorney-client privilege and work product doctrine and provided a privilege log.  (*Id.*, at 4-5.)

Request No. 12 requests documents evidencing communications between Serranos and their attorneys regarding medical bills and liens.  (*Id.*, at 6; *see also* Interrogatory Number 12, *id.*, at 19.)  Serranos asserted the attorney-client privilege and work product doctrine and provided a privilege log.

Request No. 13 seeks documents "evidencing [Serranos' attorneys'] investigation, evaluation, handling, litigation and/or settlement" of the claim prior to March 12, 2010.  (*Id.*, at 6.)  Serranos asserted the attorney-client privilege and work product doctrine, and objected that the request was overbroad, unduly burdensome and ambiguous (therefore declining to produce a privilege log).  (*Id.*)

Request No. 14 seeks Serranos' attorneys' entire file regarding the claim before March 12, 2010.  (*Id.*)  Serranos asserted attorney client, work product and relevance objections, and objected that the request was overbroad, unduly

burdensome and ambiguous (therefore declining to produce a privilege log).  (*Id.*, at 7.)

Request No. 15 asks for documents evidencing Serranos' attorneys' investigation of other potential tortfeasors.  (*Id.*)  Serranos asserted attorney client, work product and relevance objections, and provided a privilege log.  (*Id.*)

3.     **Serranos' Offer of Compromise**.

In their response to the motion to compel, Serranos describe the following as "Matters Not at Issue."

> [Serranos] agree that [Insurance Company] is entitled to discovery on the limited issue of when (and whether) its policy limits offer would last have been accepted prior to December 30, 2009, and why such an offer would or would not have been accepted prior to that date. This evidence is necessary on causation.

(Doc. 46, at 2.)  This concession is similar to the offer, in response to Interrogatory No. 6 that:

> counsel will respond to written and verbal discovery on the subjects of whether a policy limits offer on behalf of Derek Christiani would have been accepted, when that could have been accomplished, and why such an offer would or would not have been accepted.

(Doc. 31-5, at 17.)  Serranos have not supplemented their responses to provide the information offered, nor has Insurance Company agreed to limit its inquiry to this information.

## ANALYSIS

Where an action, such as this, is based on diversity jurisdiction, state law supplies the rule of decision on privilege. Fed.R.Evid. 501. Insurance Company does not contest Serranos' claim that the information and documents requested are within the attorney-client privilege as established by K.S.A. § 60-426(a), or within the work product doctrine of Fed.R.Civ.P. 26(b)(3). The contents of the requests at issue, for the most part, obviously implicate the privilege and doctrine.

The importance of the attorney-client privilege in American jurisprudence is well-established. *Milavetz, Gallop &Milavetz, P.A. v. U.S.*, 130 S.Ct. 1324, at n.5 (2010) (holding that the attorney-client privilege is an important "means of protecting that relationship and fostering robust discussion" between a party and its counsel). As such, waivers of the privilege are to be narrowly construed.

Insurance Company's claim is that Serranos' have waived the attorney-client and work product doctrine by making their counterclaim, thus placing the privileged information "at issue." Under Kansas law, some "waivers" of the attorney client privilege are listed as "exceptions" under K.S.A. § 60-426(a). A general waiver provision is also contained in K.S.A. § 60-437 which provides among its provisions that a person waives a privilege if he "makes disclosure of any part of the matter . . . to anyone." Further, these are not the only sources of waiver. Waiver may also occur procedurally, as in the case of an express and

intentional waiver.

Kansas courts also recognize that the state-law privilege may be waived when the party claiming the privilege puts the "fact of the communication at issue." *State ex rel Stovall v. Meneley*, 271 Kan. 355, 22 P.3d 124 (2001) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 579-81 (E.D. Wash. 1975)).  It is this latter principal which Insurance Company urges effected the waiver in this case.  The test set out in *Hern* has also been applied to federal actions brought in Kansas federal courts.  *Williams v. Spirit/United Management Company*, 464 F.Supp.2d 1100 (D. Kan. 2006); *State of New Jersey v. Sprint Corporation*, 258 F.R.D. 421 (D. Kan. 2009).  The Court agrees that this standard is applicable to the present issue.

Under the *Hern* test, the Court must find each of three conditions present to evoke a waiver.  First, the assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; second, through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case, and third, application of the privilege would deny the opposing party access to information vital to its defense.  *Williams*, 464 F.Supp.2d at 1104.  The privilege is then found impliedly waived through the party's own actions when the party "places information protected by it at issue through some affirmative act for his own benefit, and to allow the privilege to protect against

such disclosure of such information would [be] manifestly unfair to the opposing party." *Hern*, 68 F.R.D., at 581 (cited with approval in *Williams*, 464 F.Supp.2d at 1105).

The *Hern* court reviewed an assertion of privilege by state officials who had interposed a immunity defense to a claim under the Civil Rights Act. That court ruled that because consultation with counsel was essential to the good faith defense, if the plaintiff could first show substantial merit to his claim, the attorney client privilege was waived by the assertion of the immunity claim. 68 F.R.D. 574.

The *Williams* court, applying *Hern*, rejected an argument that reliance on good faith compliance with internal policies in an Age Discrimination in Employment Act case waived the privilege, even when those policies includes a required legal review. 464 F.Supp.2d at 1105. The court observed that "the mere fact that privileged material is relevant to a matter that is raised as an issue in connection with the assertion of an affirmative defense is insufficient to trigger a waiver." *Id*. Similarly, in *State of New Jersey v. Sprint*, the court rejected an argument that corporate directors had waived the attorney client privilege by testifying generally about receiving legal advice, when none of the defendants had raised advice of counsel as a legal defense. 258 F.R.D. at 432-433. The difference between *Williams* and *Sprint* on one hand versus *Hern* on the other is that in the former cases the attorney-client communications are merely relevant to the claims,

while in the latter they were integral to the claim itself.

Insurance Company argues that Serranos' counter claim alleging the breach of the duty to defend Christiani waives the Serranos' privilege as to communications with their attorneys in the state court case because causation must be proven.  They argue that proof of causation requires proof that the Serranos would have accepted an earlier offer of a policy limits settlement if the offer had been made.  While this may be true, thus making the Serranos' communications with their attorney factually relevant, consultations with counsel is not integral to Serranos' claims.  Evidence of privileged communications between the state court plaintiffs and their counsel is not placed directly at issue by Christiani's bad faith claim, although brought by the Serranos through assignment, that Insurance Company breached its duty to its insured.  Although the Court agrees that such evidence is relevant, Christiani's claim of breach brought by the Serranos does not waive Serranos' privileged communications with their attorneys in the state court action.  Serranos have not placed the privileged communications "at issue" simply file asserting the bad faith claim.

The inquiry, however, in this case does not end here.  Serranos state in their response to the present motion that Insurance Company

> is entitled to discovery on the limited issue of when (and whether) its policy limits offer would last have been accepted prior to December 30, 2009, and why such an

offer would or would not have been accepted prior to that
date. This evidence is necessary on causation.

(Doc. 46, at 2.) In their supplemental response to interrogatories Serranos stated

that "counsel will respond to written and verbal discovery on the subjects of

whether a policy limits offer on behalf of Derek Christiani would have been

accepted, when that could have been accomplished, and why such an offer would

or would not have been accepted." However, this information has not yet been

provided.

The Court interprets Serranos' offer of compromise on this issue as an

admission that Serranos anticipate propounding some of this information to prove

causation in this case. However, if Serranos elect to provide such information,

they may not limit the inquiry to information they elect will be beneficial to their

cause. Neither may they limit the form of the information to statements from

counsel. Rather, that privilege will be waived if the Serranos make "disclosure of

any part of the matter." K.S.A. § 60-437. The Court agrees with the parties that in

this case the question of whether an offer to settle for policy limits would have

been accepted prior to the offer of policy limits on December 30, 2009, is likely

relevant to the issue of causation. However, if Serranos elect to support that claim

by providing privileged information, they will have waived the privilege regarding

that "matter." They will not be able to limit the inquiry to disclosure from counsel,

and will waive the privilege to the extent necessary for Insurance Company to test their contentions.  Furthermore, if Serranos' support the causation elements of their claims with privileged information, they will, under the ***Hern*** test, place advice of counsel on those matters "at issue" and, thus, waive the privileges to that extent. The Court is not able to predict the extent of the waiver prior to the disclosures, which have not occurred.  At the very least, it would seem that a disclosure that Serranos would have accepted an offer, and would have been advised to accept an offer, prior to the filing of the state court case in November of 2009, and why, would allow full inquiry into discussions with counsel concerning potential offers through the date of the decision to reject the December 30, 2009,  offer.

In this case, the work product information requested under Rule 26(b)(3) is so entangled with the attorney-client privilege that the Court sees no reason to evaluate it separately.  The content of the materials contains mental impressions, conclusions, opinions, and legal theories of Serranos' attorneys, and therefore "must" be protected under Rule 26(b)(3)(B).  However, the Court will rule that the privilege is waived to the same extent as the attorney-client privilege if Serranos attempt a partial disclosure to support their claims.

Requests for Production Nos. 13, 14, and 15 are unmitigated attempts to recover work product of Serranos' attorneys.  These requests go far beyond any likely waiver, and Insurance Company has made no showing that those items

discoverable as exceptions to the protection under Rule 26(b)(3).

The supplemental objections filed by Serranos are not relied upon in this ruling.  However, the Court encourages dialogue between the parties concerning disputed discovery responses (see D. Kan. Rule 37.2).  The Court expects such conferences to produce amended responses, and unless justice requires because of prejudice or bad faith, the Court will not prohibit supplemental objections or improved privilege logs.

The absence of formal privilege logs as to Interrogatories Nos. 8, 9, 10, 11, 12, 13, 14, 15, and 16,  and Requests for Production Nos. 8, 10, 11, and 14, do not bar assertion of the privileges.  Rule 26(b)(5) requires that protected information be described in a way adequate for the other party to assess the claim of privilege. When this can be accomplished without a formal "privilege log," one is not required.  *See **Shoemaker v. McCormick, Summers & Ralarico, II, LLC,*** No. 10-2514-RDR, 2011 WL 5553652, n.21 and cases cited therein (D. Kan. 2011).  The present case is one in which, because the discovery requests directly ask for communications between attorney and client as well as obvious work product documents, the privileged nature of the requests is obvious from the requests themselves.

The same cannot be said for Request for Production No. 6.  Serranos respond to this request inconsistently by objecting that the request includes

privileged documents, yet claiming that none exist.  Serranos are instructed to choose one response or the other.  If documents are being withheld, they are instructed to provide a compliant privilege log.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the motion to compel responses to Interrogatories Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16, and Requests for Production Nos. 8, 9, 10, 11, and 12 are **DENIED**.  Serranos objections to those requests as protected by the attorney-client privilege and work product doctrine are sustained.  If, however, Serranos elect to disclose protected information to support their claims in this case, such disclosure will waive the privilege claims as to the matters to which the disclosures relate.

The motion to compel responses to Request for Production No. 6 is **GRANTED**.  Serranos are instructed to provide a supplemental response clarifying whether any such requested documents exists.  If privilege is claimed as to any such documents, the documents will be described in a compliant privilege log.

The motion to compel responses to Requests for Production Nos. 13, 14, and 15 is **DENIED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 16th day of December, 2011.

s/Kenneth G. Gale
KENNETH G. GALE
United States Magistrate Judge